Mr. Tremonti for the appellant, Mr. Gottlieb for the appellee. Morning. Good morning. May it please the court, Michael Tremonti for appellant. Several decades ago, the defendant in this case renounced US citizenship. In doing so, he freed himself of his obligations to the national community here, and he forfeited the protections of the First Amendment Petition Clause, which ensures the right of, quote, the people to petition the government for a redress of grievances. The Supreme Court in the United States versus Verdugo-Urquidez 1990 decision examined the definition of the phrase the people in the First Amendment and concluded that, quote, the people refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community. By renouncing his membership in the national community and intentionally severing his connection with the United States, Mr. Browder took himself out of that definition. Mr. Counsel, your argument assumes that the only basis for the government contact exception under D.C. law is the First Amendment, but there's some question about that, isn't there? There's some question about that in environmental research, the on-bank case, D.C. on-bank case. They gave two reasons for the justification for this section, only one which was First Amendment. The other was to avoid making D.C. a national forum for litigation of this kind. It's true, in a later case, the court said it was First Amendment, but there seems to be some serious debate about whether a panel of the D.C. Court of Appeals can, in fact, narrow a rule like that. Which is why we ask you to consider this question of certification. I mean, how can we decide that question? How can this court decide that issue? It's a very important question. D.C. law. Your Honor, we agree that it's an important question, and we believe that it's a question that may properly be certified to the District of Columbia Court of Appeals. Specifically, the question, whether or not the government context exception applies to exclude from the jurisdictional calculus contacts with the district by defendants who are not entitled to the protections of the First Amendment. But we agree- But you're okay with certifying that, if we decide to do that. That's okay with you. Is your principal argument that there is no are covered by the government contact exception under the D.C. law? Forgetting the First Amendment, whether that implicates the First Amendment or not, there is no case, you claim, and I can't find any, and I'll ask the other side, that says that exception applies to non-resident aliens. Is that your argument? So, let me be very specific in our response. We believe that this particular defendant cannot invoke the protection of the government context exception, because he does not enjoy a protected right under the petition clause, having rejected his citizenship. All right. So, I want to go more narrow, okay? I want to try and figure out what D.C. law says. You're making a loftier argument. I understand what you're arguing, and we are not inclined to go overly lofty if there's another way to do it. I'm asking you, are you saying there is no case authority to support their claim that a non-resident alien can say that I am protected to the extent that it's a protection? I am covered by the government context exception on the D.C. law provision. So, there are cases in the circuit, there are federal court cases, where district courts on a handful of occasions have held without deciding the issue. Are there any court of appeals decisions? There are not. There aren't any. And the one that they cite in the district court site really does not decide the question. There's a footnote reference that doesn't. I'm trying to understand how much you're pushing that, as I understand your loftier notion, but I'm trying to understand, are you saying there is no circuit law to support their claim to be under the government context exception protection, so to speak? There is no circuit law, Your Honor. However, I'd like to point out, I believe that the position that we are advocating is actually narrower rather than loftier, and here's why. It is hypothetically possible that a non-resident alien, for example, a citizen of a foreign country or even a corporation in a foreign country, could, under the definition of the people in Verdugo or it would come within the definition of the people. In other words, our position is narrower in that it doesn't exclude wholesale every single non-resident alien. I'm only talking about, remember, the reference to the exception, the government contact exception. Correct. Correct. Correct. What we're saying is that... Well, you know, remember the initial case in the D.C. Court of Appeals talks about citizenry. So you have that on top of the First Amendment, and the question is to whether or not the First Amendment to what extent covers non-resident aliens. But the original case in the D.C. Court of Appeals refers to citizenry, protecting of citizenry. It does not talk about... And I'm trying to understand how much you're going there. Let me ask you... So I guess you're hedging on that, and your last answer suggests that that's not your principal argument. But let me ask you... Go ahead. You want to... I was going to say, I'm not convinced that the court has to go that far, but it is true, and we completely agree with your honor, that if you look at the case law that you're talking about in the District of Columbia Court of Appeals, and in particular, if you look at environmental research, there, unquestionably, the court is only talking about an exception that applies to members of the national citizenry. There's no question. Their rationale doesn't go any more broadly than that. And I don't see any of our D.C. Circuit, not D.C. District Court. I don't see any D.C. Circuit case extending it there. But I want to ask you another question. Assume I don't agree to the extent that you're making the argument. Assume I don't agree that you fit substantial revenue, that you can rest on that. Then I would see your claim as principally engages in any other persistent course of conduct. I would see that as your claim. Now, what are... Give us a sense of what conduct you're talking about, and assume the government context might apply. Just take that aside. So what are the other contexts that you are resting on to make the argument that they satisfy the statutory requirement of engaging in other persistent courses of conduct? So just so I follow the assumption, the court would hypothetically not agree with us about somebody who's renounced their citizenship. Leave that aside for now. Yeah. I don't know what to make of that. Leave that aside for now. So if that were the case here, you would take out of the jurisdictional calculus, the defendant's contacts with the jurisdiction up to 2012, which is when the Magnitsky Act was passed. And you would look only at the post-2012 context. And there you would have a very substantial record, over 20 contexts that we know of so far that are in the public record, that fall into several categories, none of which has ever been recognized as a government contact within the exception. So for example, the defendant entered the district on multiple occasions to market his book. He made appearances at think tanks. He came here to give press interviews, to go on TV and on the radio. These were all non-discretionary contacts. Okay. So here's my question. And I understand your list and it looks like it's about 20 over eight years, I guess, something like that. 20 over eight years of the sort of things that you're talking about. Is there any case that explains or tells us something to suggest that 20 contacts of this sort coming in and out of the country for a press conference and going to lunch and whatever he was doing is what we're talking about when we say persistent contacts under the DC statute? Well, I think that the analysis is spelled out very clearly in Crane v. Carr, which is one of the few circuit cases that really talks about how you go about applying A4, right? As opposed to A1. There's plenty of case law on A1, not a lot on A4. And the 80 or so government contacts exception cases really talk only about what you exclude. But if you look at Crane v. Carr, what the court there says is what you're looking at is you're trying to determine, because you know, you've got injury in the district, right? So you've already got a pretty firm foundation under the due process clause. You're looking at the plus factors and you're is the in forum contact so isolated? And is this a situation where the defendant has no affiliation or scant affiliations with the district? And that's not the case here. Here, you've got a defendant who first of all, is on record as saying that he made a second, he has made a second career in the district. He's here all the time doing all sorts of different things to promote interests. And none of those contacts, promoting his personal interests, and none of those contacts have anything to do with getting information to the government, getting information from the government and critically in the language of- Forget the government contacts thing. I understand your argument. I'm trying to understand what do we mean by persistent course of conduct? Does persistent mean conduct of the same sorts or that your presence is about something in particular? So we would have reason to know that if you come in, you're about whatever, right? And you're doing it persistently? Or does it mean you made 20 trips to the USA over eight years? Well, I think under Crane v. Carr, what the plus factor analysis, the persistent course of conduct remember is a plus factor. The purpose of the plus factor analysis is to ensure, as a matter of due process, that the course of conduct that's being counted as a plus factor is not so trivial or isolated that it counts as nothing. But it doesn't require much more than that. Here, we have quite a bit. Here, we have someone who the evidence suggests strongly is making a career here, repeatedly coming to the district to sell his book, repeatedly coming to the district to demonstrate his bona fides as an expert in Russia-U.S. relations. Why you're conceptualizing persistent conduct as if it were the due process minimum plus a little bit more. And I'm not sure that gives fair content to the statute itself, which uses the word persistent read in context of other prongs of the statute, which use words like regularly and substantial before revenue. It seems like the statute is designed to set a much higher trigger than just the due process minimum. I think that my understanding of A4 based on the case law is consistent with your honor's observation that unlike A1, which is intended to extend to the outer bounds of what's permitted under the due process clause, A4 requires something more. However, the case law is quite clear that it is a lenient standard. And again, I believe the touchstone is Justice Ginsburg's decision in Crane v. Carr, which makes it very clear that the due process safeguard that is embodied in those plus factors is not a rigorous standard, but is rather intended to ensure against a situation where a defendant is being hailed into the district who has no meaningful contact with the district. The contacts here that are alleged and in the record evidence a very significant, indeed persistent, series of entries into the district over time, which are characterized by the defendant himself as a career in Washington for a consistent set of purposes. So I think we are well within, comfortably within A4. Just one more question for me, which is when we're assessing persistent course of conduct under the A4 subprong, do we need to screen the contacts through the fiduciary shield doctrine? Do we need to consider whether the fiduciary shield doctrine cuts out some of those contacts? So we don't take issue with the viability of the fiduciary shield doctrine. Our position on this subprong of A4. Exactly right. You rest on the proposition that we need to consider it, but it is not going to apply where you're talking about the founder and CEO of the company. That's exactly right. No, go ahead. Finish your question. Oh, I was going to ask you one more question about the government contacts exception. Um, you've talked about the fact that, uh, the defendant here is a UK citizen and you've raised all those questions about whether the exception applies to, but isn't there a second issue lurking here, which is unresolved and that is all of the cases so far under this exception that I direct contact with government agencies. Here, the defendant is arguing that yes, there's no direct contact, but this is Washington and people lobby in many indirect ways, press conferences, writing books, uh, shows. Uh, I mean, that's just the way Washington works. And, um, and except for one district court decision, um, there are no cases extending it that far. And isn't that a unresolved issue under DC law also? In other words, don't we have two certifiable questions here? So your honor, um, I think that the question of the scope of the doctrine, in other words, whether or not it brings within its sweep, not just tax for the purpose of directly providing information or to or from the government, but, uh, uh, uh, as was held by the course below, uh, any conduct, any conduct that is any contacts that are arguably related to lobbying. I don't think that's an unsettled question. I mean, in, in the case of Bechtel and Cole, uh, which was a panel that, um, that, that judge Edwards, that your honor sat on, um, the court was very clear to emphasize that in addition to requiring, uh, a contact with a government agency, the contact also had to be non-discretionary. That's a critical concept that already is, uh, uh, uh, enshrined in this circuit's decisional law. It, it has to be a contact to be protected under the exception. It has to be a contact where you had to come into the district to do it. Non-discretionary. That's Cole and Bechtel. All of these, he's come into the, into the district. It's his argument is, just as people come to the district to lobby a particular agency specifically, I've come into the district, uh, to lobby, to influence, uh, the passage of this bill through writing a book and or the DC courts that reject that theory. That's, that's my question. So since there's no controlling decision and it's clearly important because, uh, it's clearly important question and it raises tricky issues. Uh, my only question is, isn't that a certifiable question also? Uh, I would submit your honor that, that, that expansive reading of the government contacts exception is fundamentally inconsistent with Bechtel and Cole's requirement of that a contact be non-discretionary. All of these contacts were, all of these contacts were activities that could have taken place anywhere. The defendant could have given a press interview in any place in the world. He didn't have to come to the district to do it. He could have spoken, uh, uh, to promote his book anywhere in the world, but he came to the district. They're not, these are all discretionary activities. I think Bechtel and Cole squarely requires that the context non-discretionary and therefore- Now are you, are you merging together the pre-act conduct where it really was direct activity in Congress with some of the later activities? Are you saying there was nothing, assuming a non-resident alien would be covered? Are you assuming there's no activity here that would fit the exception? Assuming that a non-resident alien, oh, is covered by the- Yes, covered by the exception. Are you saying nothing here? Not, I would, we would say that none of the post-2012, um, uh, contacts- Post-2012. Post-2012. Pre-2012, I agree. If the exception applies, pre-2012, he's going to Congress. Right. Okay, fine. So your, your argument is that post-2012, um, the contact applies or not, there are plenty of other activities that fit your argument is, there are plenty of other activities that fit the persistent course of conduct. So you said, yeah, I'll concede, uh, he's covered. Let's assume non-resident alien is covered. He's covered. I concede that. That's not the whole case. Your argument is, there's much more going on here. The persistent course of conduct is well beyond anything that the, uh, exception would, was ever intended to cover. That is exactly right. We don't need the exception to prevail in this case. I just want to make sure I had you straight. That is clearly, that's why I was asking, and I will ask the other side as well. It seems to me this thing rises and falls more or less on persistent course of conduct. And I'm trying to get a handle on it because I hear you to say, if I'm willing to give up the non-resident, resident alien argument, because I win anyway. That's right. And I think the, the only point I would add to that is given how many contacts we have post-2012, we think there's a more than a good faith basis for jurisdictional discovery to determine whether beyond what's available in the public record, we, there's, there's more evidence. Thank you. All right. I got you. All right. I think unless Judge Cassis has a question. I do not. Okay. You're welcome. We'll hear from the other side. Thank you, Your Honor. Mike Gottlieb from Wilkie, Farr, and Gallagher on behalf of Mr. Browder. We're here today because Bill Browder made the courageous decision to stand up to Vladimir Putin's kleptocratic regime after his friend and colleague Sergei Magnitsky was incarcerated and murdered for the offense of having revealed a massive corruption scheme involving the Russian government. Mr. Browder has since devoted his life to pursuing justice for Magnitsky. His policy agenda is to persuade governments, as well as the voters who elect those governments and the media that informs them, to adopt and enforce the Magnitsky Act, which seeks accountability for corrupt and violent Russian officials. This policy agenda is precisely what led Mr. Browder to author the book, Red Notice, and it led the United States Congress to invite him to Washington DC to testify publicly and to attend meetings here. Appellant has failed to identify a single substantive contact Mr. Browder had with the district that is separate from his regarding the Magnitsky Act, not one. Let me just, if I may, because I'd really like to get the questions answered. I think you have a really difficult argument to make as I read the case law, and I've, God knows, spent time reading it, post-2012, to make the argument that your client's covered by the contacts provision. That just seems an enormous stretch, and that's forgetting the question that we could have as to whether or not he's covered at all, because he's a non-resident alien, and there is no circuit law to support that. But let's leave that alone. There is conduct post-2012, and the struggle for me, just so you have one judge's struggle here, the struggle for me is whether or not that fits the a long time ago. I think it was Justice Ginsburg who wrote the opinion. That is a less substantial requirement than the doing business requirement, and that's law of the circuit. It is not an overly rigorous requirement, and so now I need to understand both of your views on what that means, because I'm going to tell you honestly, my current thinking for what it's worth is, I don't know how you can possibly make the argument that the contact would apply post-2012. There are all kinds of things going on, nothing like what D.C. law up to now has put in the contacts exception. So why is this not persistent course of conduct? Let me try to take that a couple different ways, your honor. The first is as a factual matter. This distinction between pre and post-2012 fundamentally misunderstands. Well, you know what, don't make it exactly 2012. There's the period up to the act, and then there are other things after. Right, your honor. That's precisely what I'm going to address. It fundamentally misunderstands what the Magnitsky Act does. The Magnitsky Act authorizes the imposition of sanctions, which requires further action by the United States government in the form of OFAC sanctions from Treasury in determining the individual subject to those sanctions. Mr. Browder's advocacy in D.C. is continuing to make arguments about who should be subject to those sanctions. He's engaged with the Treasury Department, engaged with Congress on those questions. So the fact that the act was enacted is completely irrelevant. The idea behind Mr. Browder's advocacy was not just to enact the bill, it was to ensure that it's enforced. It also ignores that the plaintiff in this case. But that would support him going to Treasury. I'm not sure it supports him having a press conference. Yeah, so Judge Katzen, if I could, I'll get to that argument in one moment. The second point I want to add is that this argument ignores that the plaintiff launched a sophisticated, well-funding lobbying campaign to repeal and or rename the Magnitsky Act. And Mr. Browder was working against that campaign in an effort to defend the act, to keep its name, and to stop Congress from repealing it. Now, as to the legal question of what contacts are covered, there's a research articulating what the contact exception is designed to cover. But we don't just rely on cases like United Therapeutics that involved the Vanderbilt lobbying offices in D.C. The way this contact exception arose came from this court in the Mueller-Brass decision in the 1940s, and it was about the establishment and creation of corporate offices in Washington, D.C. The court in Mueller-Brass and all the cases that environmental research cites in footnote 9 all recognize that those offices will do some things other than directly interfacing with the U.S. government. They might take orders, they might take meetings with other companies, they might belong to trade associations. But when the principal purpose of those efforts in D.C., when the objective is to interface with the U.S. government, the contact section exception has always been found to apply. And there's a lot of cases from environmental forward, frankly, are the ones that we have, I think, have to guide our thinking, really are not stretching it as far as you're stretching it. They just are not. Press conferences, a cocktail party, a meeting, and I'm not saying they're insignificant. I totally understand the significance of them. But the cases post-environmental are about direct connections with government agencies or the legislature, let's say. That's the case law I'm looking at. And that's where it's bounded. Now, I hear what you're saying, but there's no case law to support it. Your Honor, respectfully, I disagree. There are cases like Jung versus Association of Medical Colleges, which is a case that the plaintiff cites at footnote 11 in his brief that cites a long line of cases about participation in trade associations in Washington, D.C. Those cases recognize that when private companies and organizations come to D.C. to participate in trade association activities, including membership activities in those organizations that have no connection to the federal government whatsoever, are covered under the contact exception. And there's another case also that we cited called ICI versus United States from the district court in D.C. in 1982. And then along with United Therapeutics, there's also the Sierra Club versus Tennessee Valley Authority case. You're talking about any circuit law because I can't find it. These are all district court cases. You know what? I hate to show my prejudice, but when we're talking about precedent, respectfully, you're talking to three circuit judges and precedent is established by the circuit. I understand that, Your Honor. Give me the circuit law. We love our district court brethren, but the circuit precedent is established by circuit courts. There is no circuit precedent definitively on this point, Your Honor, with the exception of the cases that predate environmental research. And those cases do come from this court. And those cases like Mueller-Brass, which was a seminal case articulating with the government context. I mean, my point is really simple on this in precedent. And I take this all very seriously. We're looking at D.C. law. And I have to, as a judge, have to figure out how do I start thinking about that? I start with environmental. And we are governed by them, not the opposite. Environmental is what sets the stage. And then the certifications to them, post-environmental, that's the case law I have to look at. And so I'm looking at that, and I'm looking at our circuit law from that point forward. And that's the body of law I have to figure out. Now, where does persistent conduct, I mean, where do I get help on what, in understanding whether there's a persistent point of conduct? Because frankly, I think you're barking up a really high and difficult mountain in saying that government context covers everything here, because I can give you all kinds of teacher hypotheticals to say, here are the absurd results if I try and write it that way. Anytime I come in with a motive of saying, meeting with people and saying things that might promote that statute, I'm protected by the government context provision. That's not what the law is. Your Honor, if that argument were correct, it would mean that offices that are established in Washington, D.C. for the purpose of interfacing with the U.S. government would not be covered under the exception unless that's literally all they did. So those offices would not be eligible to issue press releases, to engage in trade association meetings, to work with think tanks, to work with other interested organizations. And that simply ignores the reality of what businesses do when they come to Washington, D.C. If you're just taking environmental research on its terms, environmental research does not speak of the citizenry with respect to the prong of its test with the rationale that is discussing the sort of due process rationale for why environmental research exists. Environmental research has two prongs. One relates to the First Amendment. The second relates to attempting to stop Washington, D.C. from becoming a national forum for litigation that would arise for when people come into D.C. for the principal purpose of interfacing with the U.S. government. And this line of cases began with companies that were establishing offices here, and it has been articulated and developed since. Now, I want to make one point about the appellant's argument. Mr. Galli, maybe this is where you were going, but as I understood counsel's argument, it was that the case law has, in fact, resolved this issue. And he cites Bechtel and Cole in terms of his argument about discretionary and non-discretionary. Do you want to respond to that? Yeah, we don't think that any of the case law that we've cited is consistent with that rule being applied to contacts like this. But first of all, just as a factual matter. I don't understand your answer. What does that mean? What did you just say? What did you just say? He says, as I understood his argument, there's something about the Bechtel case, and it has to be non-discretionary. In other words, you actually have to, did you understand that argument? As we understand that argument, Your Honor, we do not think it can accurately state the rule, because if that were the rule as applied in this circuit, it would mean that all of the offices that companies established here would not be covered under the government contact exception. There's no requirement that a business establish an office in Washington, D.C., in order to interact with the U.S. government. Many businesses interact with the U.S. government without having offices here. That would upset- Okay, well, even if we were to agree with you, let's just assume, and this is just one member of this panel speaking, but let's just assume that I agreed with you that case law had not resolved this question. That is, that it was an open issue. All the post-environmental research cases involved direct contact. You agree with that, right? That is the appeals court cases, all of them, right? Every one of them. Every one of them. Yeah, I don't think- I made a long- Go ahead. Yeah, I'm not sure it's correct to say that they all involve direct contact with the U.S. government. I mean, for example, the Crane decision that the plaintiff has mentioned involves the receipt of federal funding by the University of Delaware. So, first of all, that's not covered by the petition clause. There's no right to receive federal funding under the petition clause. But second of all, it wouldn't be a direct contact with the U.S. government for the University of Delaware's work that surrounded the receipt of federal funding, the contacts that it had with students, for example, the contacts that it had in Washington, D.C. related to, even if not directly, in the receipt of those funds. And so, I'm just not sure it's an accurate statement that every contact that's been covered by the decisions of this court involves a direct contact, direct contact, Your Honor. But if I could, since I'm running short on time, address the citizenship- I just want to pursue this for just a second. The standard is when D.C., a certifiable question occurs when D.C. law is genuinely uncertain. Don't you think it's genuinely uncertain as to whether the government contact exception in the district colony applies to lobbying and other efforts that don't involve direct contacts with government agencies or Congress? You don't think that's genuinely uncertain? I don't think it's genuinely uncertain as this court has articulated that standard in cases like the Metz case that we cited in our 28-J letter. And we have a few arguments- Well, yeah, I saw you, but I don't understand how Metz helps you at all. What does Metz help you? The question- Two points I would highlight for Metz. The question in Metz is whether there is a discernible path to deciding the issue. And we think there's a discernible path for deciding this issue here based on all of the cases that involve contacts that are not direct contacts with the U.S. government that have been considered government contacts. And that is the discussion we just had. But there's another point in Metz that is important, which is that when a plaintiff has made a strategic decision to sue in federal court and could have sued in superior court, the plaintiff should not receive the benefit of that by essentially getting to mix and match district courts and courts of appeals on legal issues. And the plaintiff did receive a strategic benefit in this case. Had he sued in D.C. superior court, the D.C. Anti-SLAPP Act would have applied and a special motion to dismiss would have been adjudicated. That was not the case here because he chose to sue in diversity jurisdiction in federal district court and show Mr. Browder should not be prejudiced by that. I don't understand, Mr. Gottlieb. I have no idea what that has to do with how we apply our standard for whether to certify or not. The question is whether the question is genuinely uncertain under D.C. law and whether it's important. I don't see anything that suggests that somehow litigation strategy. I mean, if it's a genuinely uncertain question and it's important, we can't decide it even if plaintiff does get a litigation advantage out of it. Your Honor, I think that the point on genuine uncertainty is simply that the way that this court has articulated the test is whether there's a discernible path for deciding the issue based on the precedents that exist. And we think that there is a discernible path for deciding that. We understand that there are unanswered questions with respect to the scope of the contact exception. We don't dispute that. But the precedents that do exist and the types of business contacts with D.C. that have been covered under the government contact exception over the years do create a path from which to reason on what those principles are. You're not citing us any circuit law. Are you talking about the trade association, another district court case? Your Honor, we can see that these cases have largely come up through the district courts. But the general principle that one can derive from them is think about the context that a particular defendant has with Washington, D.C. Would that defendant have had those contacts if the capital of the United States was in Houston instead of Washington, D.C.? And here it's clear that Mr. Browder would not have made any of these trips relating to discussions around the Magnitsky Act if the seat of national government was in Houston rather than Washington, D.C. He was invited to by Congress. He was speaking to things like the Helsinki Commission on these trips. He was talking about a national piece of legislation enacted by Congress enforced by the Treasury Department. And we don't think the plaintiff seriously argues otherwise. That's the general that is the argument that environmental research made. So if he took a position at Georgetown Law School to teach about matters like this and focusing on this statute, how do you analyze that? I think that that, well, first of all, it would depend whether we were asking the question under subsection A-1 of the statute or as we are here under A-4. So if he were teaching at Georgetown and the argument for jurisdiction was that he engaged in some kind of act from which the claim in the case arose, clearly there would be jurisdiction there. And that would actually raise the issue that the court in Rose addressed. And this is an important point I haven't been able to make yet, which is that there is no conflict between Rose and environmental research with respect to the statute that's being applied in this case. Rose is expressly limited to claims brought under section A-1 of the long-arm statute. Footnote, it's clear on this point. Company of Brasileira repeats that point. And so the apparent conflict that exists between Rose and environmental research is only present when there is no due process concerns at play, which is the case under A-1, but is not the case in a case brought under A-4 where you're trying to hold a non-citizen foreigner to civil jurisdiction in DC for their extraterritorial acts. So that's a really important point along with... Mr. Gallagher, finish up because we're way over time. And unless Judge Edward or Judge Katsas has any other questions, we're going to move on. So the only other point I would make is that there are more than 15 published decisions, both from this court and from the district courts in DC, applying the contact exception to non-citizens. The uncertainty that the plaintiff has mentioned does not exist. That does include Judge Edward's three decisions from this court, including the Kaiser stole wine case in 1981, the Donoghue versus Far East Airport case from 1981 also that we cited in our 28-J letter, and a case that predates environmental research called Trayer versus de Havilland Aircraft of Canada from 1961. That's 294 F-Second 229. Mr. Gallagher, you're out of time. Thank you. Thank you, Your Honor. And Mr. Tremont, you too, I think we're out of time, but you can take two minutes. Just very briefly, Your Honor, I would point to the relevant language in Bechtel and Cole at 18 F-Third 953, where the court stated that the defendant's, quote, that the contact at issue, quote, was discretionary, not dependent on the unique character of the district as the seat of national government. And therefore we find that Graceland's contacts with Bechtel fall outside the protective scope of the government contacts doctrine. I think that language and that principle, which is key to the holding, forecloses the appellee's argument here. However, if there is a question to certify and Bechtel and Cole is not controlling, I think it would be the following, whether or not discretionary contacts that do not involve direct connection with the government can be counted under the government contacts exception. I have nothing further, Your Honor. Okay. Gentlemen, thank you. We'll take the case under advisement. Thank you.
judges: Tatel, Katsas, Edwards